# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 13-3123

———————————————

Donald Stephens,

*Plaintiff - Appellant,*

v.

Leslie Jessup; Amtote International, Inc.,

*Defendants - Appellees.*

——————————

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

——————————

Submitted: December 10, 2014
Filed: July 20, 2015

——————————

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

Donald Stephens went gambling at the Oaklawn Jockey Club in Hot Springs, Arkansas, and wound up in a dispute with security personnel and a local police officer, Leslie Jessup, who accused him of theft. Stephens later sued the officer and Amtote International, Inc., alleging false imprisonment, conversion, defamation, violation of his civil rights, and intentional infliction of emotional distress. The district court dismissed the action against Amtote International for failure to state a

claim. We conclude that Stephens did not perfect an appeal of that order. The district court separately dismissed the claims against Jessup, ruling that they were barred by the doctrine of issue preclusion. We express no view on the merits of those claims, but we conclude that they are not precluded by previous litigation, so we reverse and remand for further proceedings.

## I.

According to the complaint, Stephens visited the Oaklawn Jockey Club for a night of gambling on February 6, 2010. After winning a sum of money playing slot machines, Stephens cashed out his ticket and left the casino. He returned later that evening and purchased another gaming ticket for use in the slot machines.

While playing on this ticket, he was approached by several uniformed casino security personnel and Jessup, a uniformed Hot Springs police officer. Jessup and the security personnel accused Stephens of stealing the cashed-out ticket from another patron who had been playing the slot machine. They detained Stephens while casino employees reviewed surveillance footage to determine whether the ticket was stolen. The complaint next alleges that Jessup threatened to "arrest [Stephens] and take him to jail immediately" if he did not return the money that he received from cashing in the stolen ticket. Jessup recited *Miranda* warnings, escorted Stephens to his vehicle, and retrieved the money won at the casino.

In November 2010, Stephens sued Oaklawn in the Circuit Court of Pulaski County, Arkansas. That complaint alleged that Oaklawn, through its "agents, servants, and employees . . . acting within the scope and course of their employment," committed false imprisonment, conversion, defamation, violation of civil rights, and intentional infliction of emotional distress. The court granted summary judgment in favor of Oaklawn on the civil rights claim, and the remaining claims proceeded to

trial. A jury ultimately returned a verdict in favor of Oaklawn. Neither Jessup nor Amtote International was a party to the state court action.

Stephens then filed suit against Jessup and Amtote International in February 2013, alleging the same five causes of action against these new defendants. Jessup moved to dismiss the complaint, arguing that the claims were barred by the doctrine of *res judicata*. Amtote International moved separately to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Stephens failed to state a claim against it. On July 29, 2013, the district court granted Amtote's motion to dismiss for failure to state a claim. In a separate order entered on July 30, the court granted Jessup's motion, holding that the doctrine of issue preclusion barred Stephens from proceeding against Jessup. Stephens filed a notice of appeal and argues now that both orders were flawed.

## II.

Amtote International argues that we lack jurisdiction to review the July 29 order granting its motion to dismiss, because Stephens's notice of appeal identified only the July 30 order dismissing the claims against Jessup. The argument is well taken. To vest this court with jurisdiction, an appellant must comply with the requirements of Federal Rule of Appellate Procedure 3 to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B); *see Smith v. Barry*, 502 U.S. 244, 248 (1992); *Schell v. Bluebird Media*, No. 14-1649, 2015 WL 3429443, at *3 (8th Cir. May 29, 2015). Stephens did not designate for appeal the order dismissing his claim against Amtote International.

Stephens's notice states that he is appealing "from the (Order) entered in this action on the 30th day of July, 2013." Although we liberally construe notices of appeal, we cannot waive the jurisdictional requirements of Rule 3, and "a notice which manifests an appeal from a specific district court order or decision precludes an

appellant from challenging an order or decision that he or she failed to identify in the notice." *Parkhill v. Minn. Mut. Life Ins. Co.*, 286 F.3d 1051, 1058 (8th Cir. 2002). The district court entered two separate orders on separate motions to dismiss, but the notice of appeal states only that Stephens appeals the July 30 order dismissing claims against Jessup. We therefore conclude that we lack jurisdiction to review the district court's July 29 order granting Amtote International's motion.

### III.

Stephens contends that the district court erred by concluding that his claims against Jessup are precluded by the 2010 judgment in Arkansas state court. Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). We review the district court's decision *de novo*. *Edwards v. City of Jonesboro*, 645 F.3d 1014, 1019 (8th Cir. 2011).

Arkansas preclusion law "has two facets, one being issue preclusion and the other claim preclusion." *Huffman v. Alderson*, 983 S.W.2d 899, 901 (Ark. 1998). The district court concluded that issue preclusion barred Stephens's claims against Jessup. In Arkansas, issue preclusion requires the presence of four elements: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the issue must have been essential to the judgment." *Beaver v. John Q. Hammons Hotels, L.P.*, 138 S.W.3d 664, 666 (Ark. 2003). Issue preclusion "may be asserted by a stranger to the first judgment, but the party against whom it is asserted . . . must have had a full and fair opportunity to litigate the issue in that first proceeding." *Craven v. Fulton Sanitation Serv., Inc.*, 206 S.W.3d 842, 844 (Ark. 2005).

-4-

The district court dismissed the claims against Jessup because it thought "the issues regarding Jessup's conduct have already been decided in the 2010 lawsuit in Jessup's favor." We respectfully disagree, because the record does not show conclusively that the issues raised in the present action were actually litigated and determined in the 2010 case. The 2010 lawsuit alleged that Oaklawn was liable for the conduct of its agents and employees, including Jessup, under a *respondeat superior* theory. The claims were resolved in favor of Oaklawn, but we do not know why. Neither the order granting summary judgment on the civil rights claim, nor the general jury verdict on the remaining claims, explains the basis for decision.

There are at least two possibilities. One is that the court and jury found insufficient evidence that Jessup committed a tort or civil rights violation, so that Oaklawn was not liable under the doctrine of *respondeat superior*. But another is that Jessup was acting outside the scope of his agency or employment with Oaklawn, such that Oaklawn was not liable for any tort committed by Jessup. Under the second possibility, the issue of Jessup's personal liability to Stephens for the alleged torts has not been actually litigated and determined. Because the record does not establish that the issues raised in this action were actually litigated in 2010, the doctrine of issue preclusion does not justify dismissal of the claims against Jessup.

Jessup argues that we should affirm on an alternative ground that *claim* preclusion bars this action, but we conclude that this doctrine also fails to support dismissal. Claim preclusion in Arkansas bars a claim in a second suit when five elements are satisfied:

> (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based upon proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies.

*Ark. Office of Child Support Enf't v. Williams*, 995 S.W.2d 338, 339 (Ark. 1999). The fifth element is lacking here. Oaklawn and Jessup are not the same party, and they are not "privies" under the circumstances of this case.

Claim preclusion is inapplicable for largely the same reasons that issue preclusion does not bar the action. Under Arkansas law, "[p]rivity exists when two parties are so identified with one another that they represent the same legal right." *Crockett v. C.A.G. Invs., Inc.*, 381 S.W.3d 793, 799 (Ark. 2011). In the principal-agent context, the Arkansas Supreme Court "has all but done away with the privity requirement, choosing instead to focus on whether or not the plaintiff is attempting to relitigate an issue that has already been decided." *Jayel Corp. v. Cochran*, 234 S.W.3d 278, 282 (Ark. 2006).

Whether claim preclusion applies turns on what was established in the first action about the relationship between Jessup and Oaklawn. If it had been conceded in the 2010 action that Jessup acted within the scope of his employment or agency with Oaklawn, then the only issue in the case would have been Jessup's negligence, and Stephens could not relitigate the same thing in a second action. *Davis v. Perryman*, 286 S.W.2d 844, 847-48 (Ark. 1956). But if there was no such concession, then claim preclusion does not apply, because it cannot "be known with certainty that the earlier decision against the plaintiff was based on the issue of negligence." *Frisby v. Hurley*, 364 S.W.2d 801, 802 (Ark. 1963). The first decision might have turned on whether Jessup acted outside the scope of his agency or employment.

On this record, we cannot say that Stephens is trying to relitigate an issue that was previously decided or that Jessup and Oaklawn represent the same legal right. Stephens alleged in the 2010 case that Jessup acted "within the scope and course of [his] employment," but Oaklawn denied this allegation in its answer, and the record does not show that Oaklawn conceded this point. The decisions of the court and jury do not establish that the allegation was proved. In the 2013 complaint, Stephens did

not even allege that Jessup acted within the scope of his agency or employment with Oaklawn. Accordingly, without a concession in both cases that Jessup was acting within the scope of his agency or employment during the events in question, there is not a substantial identity of parties, and the doctrine of claim preclusion does not bar Stephens's action against Jessup. *See Frisby*, 364 S.W.2d at 802.

For the foregoing reasons, district court's order dismissing Stephens's claims against Jessup is reversed, and the case is remanded for further proceedings. Stephens's appeal of the order dismissing claims against Amtote International is dismissed for lack of jurisdiction.

_____